UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.: 8:10-cr-1026-GRA |
| v. | ) | |
| | ) | |
| | ) | **ORDER** |
| G. Martin Wynn, | ) | (Written Opinion) |
| | ) | |
| Defendant. | ) | |
| _____) | | |

This matter is before the Court on Defendant G. Martin Wynn's Motion to Dismiss the Indictment (ECF No. 56). The Government has responded in opposition, and a hearing was held on April 29, 2011. For the foregoing reasons, Defendant's Motion is DENIED.

**Background**

On October 19, 2010, a grand jury returned a two-count Indictment against Defendant on one count of mail fraud, in violation of 18 U.S.C. § 1841 and one count of wire fraud, in violation of 18 U.S.C. § 1343. These charges relate to Defendant's alleged actions as a project manager for a runway extension project at the Oconee Regional Airport in South Carolina. The following alleged facts are taken from the Indictment.

Defendant, an engineer from North Carolina, designed the airport project's plans. Before the project could proceed, the plans had to receive approval from interested state agencies and be stamped as such. In November 2009, Defendant allegedly placed a

South Carolina Department of Health and Environmental Control (DHEC) seal onto a set of storm water construction plans without DHEC approval. He then allegedly mailed the fraudulently-approved plans to Oconee County officials. Approximately three months later, Defendant emailed a copy of the plans from North Carolina to a DHEC official in Anderson, South Carolina.[1] Based on the fraudulent approval, construction work took place, resulting in the alleged destruction of protected lands.

On April 15, 2011, Defendant filed a Motion to Dismiss the Indictment on grounds that the Indictment fails to identify "what property the alleged scheme to defraud sought to obtain." Alternatively, Defendant argues that if the property the scheme sought was the DHEC permit, a permit is not considered property for purposes of 18 U.S.C. §§ 1341 and 1343. Defendant also argues that the Indictment fails to specify how he would profit from the scheme. Finally, Defendant argues the Indictment should be dismissed because "the mailings were not sufficiently closely related to the alleged scheme to bring . . . Defendant's actions within the coverage of either 18 U.S.C. § 1341 or § 1343."

## Standard of Review

Defendant moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), alleging defects in the Indictment and moving for dismissal of the Indictment. To warrant dismissal, Defendant must show that the allegations in the Indictment, *even if true*, do not state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *see*

---

[1] Defendant allegedly sent the email to DHEC about three months after having the fraudulently approved plans mailed to Oconee County officials.

*also United States v. Stewart*, 955 F. Supp. 385, 386 (E.D. Pa. 1997) ("In a motion to dismiss the indictment we accept as true the facts alleged in the indictment and determine if those facts 'constitute the violation of law for which [the defendant] is charged.'" (quoting *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988))).

"A valid indictment must 'contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.'" *United States v. Vinyard*, 266 F.3d 320, 325 (4th Cir. 2001) (quoting *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992)); *see also* Fed. R. Crim. P. 7(c) (outlining the nature and contents of an indictment). "Every essential element of an offense must be charged in the body of an indictment, and the inclusion of a reference to the statute will not cure the failure to do so." *Daniels*, 973 F.2d at 274 (citing *United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988); *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988) (en banc)). "[S]imply parroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). "When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117  18 (1974)).

Defendant has been charged with violating 18 U.S.C. § 1341 and § 1343, mail fraud and wire fraud, respectively. "Mail and wire fraud have only two essential

elements  the existence of a scheme to defraud and the use of the mails or wire communication in furtherance of the scheme."[2] *United States v. Curry*, 461 F.3d 452, 458 (4th Cir. 2006).  However, "[i]ntent to defraud" is part of the first element*. See United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) (noting that "[i]n order to establish the first element, *i.e.*, the scheme to defraud, the Government must prove that the defendants acted with the specific intent to defraud, which 'may be inferred from the totality of the circumstances and need not be proven by direct evidence.'" (quoting *United States v. Ham*, 998 F.2d 1247, 1254 (4th Cir. 1993))).  Additionally,"materiality of [the] falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes."[3] *Neder v. United States*, 527 U.S. 1, 25 (1999). Wire fraud does have one additional requirement: use of an *interstate* wire in furtherance of the scheme.  *See United States v. O'Connor*, 158 F. Supp. 2d 697, 725 (E.D. Va. 2001).

---

[2]    Because the wire and mail fraud statutes are so similar, case law for each may be used to support the other.  *See Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").

[3]    This element has been defined as requiring that the false or fraudulent pretense, representations, or promises be about a material fact, that is, it has a "natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999).

## **Analysis**

### A. *Cleveland* **Argument**

Defendant asserts that the Indictment does not allege what property was the object of the scheme. Furthermore, relying on *Cleveland v. United States*, 531 U.S. 12 (2000), Defendant argues that DHEC's inspection and seal requirements are not "property" within the scope of § 1341. (Def.'s Mot. 5.) He points out that South Carolina state law "establishes a regulatory program" with its DHEC seal program, which is "clearly an exercise of the state's policy powers." (*Id.*) Therefore, asserts Defendant, his acts regarding the DHEC seal "do not constitute a Federal crime under the charged statutes because 'DHEC approval to proceed' is not property." (*Id.* at 6.)

In *Cleveland*, the defendant was prosecuted under § 1341 for false statements he made on a Louisiana poker license application. The Supreme Court held that § 1341 "does not reach fraud in obtaining a state . . . license . . . for such a license is not 'property' in the government regulator's hand." *Id.* at 20. The Court resisted "[e]quating issuance of licenses or permits with deprivation of property," because "a wide range of conduct traditionally regulated by state and local authorities" would then be subject to federal mail fraud prosecution. *Id.* at 24.

Here, Defendant, relying on *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993), argues that the Indictment should be dismissed because the losses to the victim in this case, *i.e.*, the damage to the adjacent lands and the construction costs, were not directly related to Defendant's fraudulent actions of placing the DHEC seal onto the plans

without permission.[4]  In *Walters*, the defendant had entered into professional contracts with college athletes and kept the contracts a secret, allowing colleges to pay scholarship funds to the athletes who had become ineligible as a result of the agency contracts. Concluding that the indictment should have been dismissed, the court held that "only a scheme to obtain money or other property from the victim by fraud violates § 1341. . . . Losses that occur as byproducts of a deceitful scheme do not satisfy the statutory requirement." *Id.* at 1227.

Unlike *Cleveland*, Defendant did not submit fraudulent information to the state; in fact, Defendant never submitted anything to the state.  Additionally, the property in this case is not a state license; the property involved is a set of construction plans.[5] Furthermore, the alleged victim of Defendant's fraud is not the state of South Carolina; the victim is Oconee County, the party who contracted for validly approved plans in order to extend its airport runway.  The Indictment alleges that Defendant "did devise . . . a scheme and artifice to defraud *the entities managing the airport project*." (Indictment 1, ¶ 2, ECF No. 2 (emphasis added).)  It further alleges that 1) "various *plans* were required to be submitted to interested state . . . agencies for approval, then stamped as such"; 2) the "stamps allowed the work to proceed"; 3) Defendant "was responsible for

---

[4]     Defendant made this argument and presented the Court with the *Walters* case during the motion hearing.

[5]     Unlike in *Walters*, Defendant's scheme as alleged in the Indictment directly deprived the victims of tangible property: viable construction plans.

developing . . . site *plans* . . . for the airport project"; 4) Defendant "unlawfully and without authorization transferred a South Carolina DHEC seal *onto a set of . . . site plans* for the airport project"; 5) Defendant "*caused [the plans]* to be delivered via commercial carrier to Oconee County officials; and 6) Defendant "did thereby fraudulently represent that the airport project had DHEC approval to proceed . . . ." (*Id.* at 1 2 (emphasis added).)  Accordingly, while Defendant may have used a DHEC seal to perpetrate his fraud, the Indictment alleges that the property in question, of which Oconee County officials were deprived, was the DHEC-approved plans.  The Supreme Court's holding in *Cleveland*, therefore, does not require dismissal of this Indictment because the Indictment properly alleges the property involved and the property is not a state license or permit.

## B. Must The Indictment Allege How Defendant Benefitted from the Scheme?

Defendant argues that the DHEC seal has "no intrinsic value and cannot be exchanged for money or property." (Def.'s Mot. 6.)  He would presumably make the same argument as to the DHEC-approved plans.   He appears to argue that because the Indictment does not allege how Defendant benefitted from the scheme, the Indictment should be dismissed.

Damages are not an element of either § 1341 or § 1343.  *See Neder*, 527 U.S. at 25 ("The common-law requirements of 'justifiable reliance' and 'damages,' . . . plainly have no place in the federal fraud statutes.  By prohibiting the 'scheme to defraud,' rather that the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted." (internal citations omitted)). Likewise,

it follows that the government also does not have to show how the Defendant benefitted materially.

Several circuits have expressly held that the government does not have to show how the defendant benefitted from his scheme or that he benefitted at all. For example, the Seventh Circuit has explained the "intent" element for mail fraud as "a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self *or causing financial loss to another*." *United States v. Owens*, 301 F.3d 521, 528 (7th Cir. 2002) (emphasis added). Additionally, the Eleventh Circuit has held that "[w]ire fraud does not require the government to prove actual financial loss *or that the defendant benefitted from her scheme*." *United States v. Williams*, 527 F.3d 1235, 1245 (11th Cir. 2008) (emphasis added).

Defendant's argument fails. The Indictment does not need to state how Defendant benefitted from the scheme.

### C. In Furtherance of the Alleged Scheme

One of the elements for both mail fraud and wire fraud is that the use of the mails or wire communication be *in furtherance* of the scheme. Defendant argues that neither the mailing nor the email were in furtherance of the scheme. To support this argument for the mail fraud, Defendant asserts his own version of the facts.[6] However, for the

---

[6] Additionally, at the motion hearing, Defendant claimed the Indictment was insufficient because Defendant had not actually been the one to mail the plans to Oconee County. To support this allegation, he presented the cover letter that was mailed with the plans, which was signed by another employee at Defendant's firm. The Court must treat all the allegations

purposes of analyzing the validity of an indictment, this Court must presume all facts in the Indictment are true. *See Thomas*, 367 F.3d at 197 (holding that to warrant dismissal, Defendant most show that the allegations in the indictment, *even if true*, do not state an offense); *see also Stewart*, 955 F. Supp. at 386 ("In a motion to dismiss the indictment *we accept as true the facts alleged in the indictment* and determine if those facts 'constitute the violation of law for which [the defendant] is charged.'" (emphasis added) (quoting *Polychron*, 841 F.2d at 834)). Therefore, Defendant's version of the facts play no part in analyzing whether the Indictment establishes that the mailing or emailing were in furtherance of the scheme.

The Indictment does specify that Defendant caused the plans, with the fraudulent DHEC stamp affixed thereto, to be mailed by commercial carrier from North Carolina to Oconee County officials in South Carolina, and that "[b]ased upon these fraudulent plans, construction work commenced on the airport project[,] which resulted in the destruction of protected lands." (Indictment 2.) The Court finds that for purposes of indicting Defendant this allegation is sufficient to establish that the mailing was in furtherance of the scheme.

---

in the Indictment as true. Count One of the Indictment states that Defendant "did cause to be delivered via commercial carrier . . . ." (Indictment 2, ¶ 4.) This allegation is sufficient to support the Indictment's sufficiency. *See Pereira v. United States*, 347 U.S. 1, 8 (1954) (holding that a mailing by a third party suffices if it is "incident to an essential part of the scheme").

Defendant presents additional arguments regarding Count Two, the wire fraud count. Defendant claims that first, he sent the plans to DHEC "at [a DHEC] official's specific request," and second, that the scheme was complete by the time he emailed the plans.

Even assuming the scheme was complete when Defendant emailed the plans to DHEC, subsequent mailings, when made for purposes of lulling the victims and forestalling detection by authorities, can still be considered to be in furtherance of the scheme. *See Schmuck v. United States*, 489 U.S. 705, 715 (1989) ("The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud."); *United States v. Sampson*, 371 U.S. 75, 78, 80  81 (1962) (holding the mailings sent after the defendant had obtained victims' money were still material to the scheme because they were sent for the purpose of "lulling by assurance that the promised services would be performed"); *United States v. Godwin*, 272 F.3d 659, 668 (4th Cir. 2001) (holding that a letter sent to a victim's landlord regarding the investment scheme, sent after the funds had been received, was sufficient to support a conviction on a mail fraud charge); *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963) ("[C]ommunications having a propensity to lull and forestall action on the part of the victims may form an integral part of the overall scheme to defraud." (citing *United States v. Sampson*, 371 U.S. 75, 80 (1962))).

As for the fact that Defendant emailed the plans to DHEC upon DHEC's request, *United States v. Merklinger*, 16 F.3d 670 (6th Cir. 1994), is instructive. In *Merklinger*, the court held that a letter sent *by* the government *to* the defendant regarding the scheme was not in furtherance because the letter was sent to aid the government's investigation to defeat any fraudulent scheme; however, the use of wires to *respond* to the government's letter was held to be in furtherance of the scheme because "it . . . kept [the] [d]efendant's scheme alive." *Id.* at 679.

The facts in this case are similar to those of *Merklinger*. Although, the Indictment does not specify that Defendant sent the email to lull DHEC or avoid detection, it does state that Defendant sent the email "for the state purpose of fraudulently representing that the airport project had DHEC approval to proceed . . . ." (Indictment 3.) The Court finds that this allegation is sufficient to establish that the wire message was in furtherance of the scheme for purposes of indicting Defendant.

## Conclusion

Defendant's arguments are without merit. Accepting the facts alleged in the Indictment as true, the Indictment contains the elements of the offenses charged, fairly informs Defendant of that charge, and enables Defendant to plead double jeopardy as a defense, should the Government attempt to prosecute him in the future for the same offense. Therefore, the Indictment is legally sufficient, and the Motion must be denied.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss the Indictment (ECF No. 56) is DENIED.

IT IS SO ORDERED.

G. Ross Anderson, Jr.
Senior United States District Judge

May 2, 2011
Anderson, South Carolina