UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.: 8:10-cr-1026-GRA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER** |
| G. Martin Wynn, | ) | (Written Opinion) |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's post-conviction Motion. Defendant has moved this Court to reconsider its denial of Defendant's pre-trial motion to dismiss, to grant a new trial, or to enter a judgment of acquittal. The Government has responded in opposition. For the following reasons, Defendant's Motion is DENIED.

## Background

Oconee County hired Talbert and Bright, Inc. ("Talbert and Bright"), an engineering firm in Wilmington, North Carolina, to design plans for a runway extension project (the "Project") at Oconee County Regional Airport. Defendant worked as an engineer for Talbert and Bright and served as a project manager on the Project. Before the Project could proceed, the Project's storm water construction plans had to be approved by interested state agencies and be stamped as such. In November 2009, Defendant cut out a South Carolina Department of Health and Environment Control (DHEC) seal from a separate set of previously-approved plans and placed the seal—without DHEC approval—onto the storm water construction plans he had prepared for the Project. He

Page 1 of  22

then mailed the fraudulently-approved plans to Oconee County officials. Three months later, Defendant emailed a copy of those same plans from North Carolina to a DHEC official in Anderson, South Carolina. Based on the fraudulent approval, construction work on the Project proceeded. The construction work caused erosion on land in and around the Project site.

A grand jury indicted Defendant and charged him with mail fraud, in violation of 18 U.S.C. § 1341 (2006), and wire fraud, in violation of 18 U.S.C. § 1343 (2006). Before trial, Defendant filed a motion to dismiss the indictment, arguing that the indictment failed to identify the property that was the object of the scheme to defraud, that a DHEC permit is not property for purposes of mail fraud or wire fraud statutes, that the indictment failed to allege how Defendant would profit from the scheme, and that the mailings alleged in the indictment were not sufficiently related to the scheme to constitute mail fraud or wire fraud. (Mot. to Dismiss, ECF No. 56.) The Court denied the motion. (Order, ECF No. 69.)

Defendant was then tried before a jury. When the Government rested, Defendant moved for a directed verdict; the Court denied Defendant's motion. During the jury charge conference, Defendant objected to the Court's proposed jury instructions, arguing that the instructions constructively amended the indictment by charging the mail fraud and wire fraud statutes using the statutes' disjunctive language instead of the conjunctive language used in the indictment. The Court overruled Defendant's objection and charged the jury in the disjunctive. The jury found Defendant guilty of both counts.

Defendant then filed the instant Motion.  The Government filed a Response in opposition, and Defendant filed a Reply in support.

## Standard of Review

Defendant seeks three alternative forms of relief: reconsideration of the Court's pre-trial order denying Defendant's motion to dismiss, an order granting a new trial, or an order entering a judgment of acquittal.

Defendant first moves pursuant to Federal Rule of Civil Procedure 59(e), alleging defects at trial and asking this Court to reconsider its order denying Defendant's motion to dismiss the indictment.  There are three circumstances in which the Court can grant a Rule 59(e) motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998).[1]

Defendant also moves for a new trial, under Federal Rule of Criminal Procedure 33.  A Court may grant a new trial if "the interest of justice so requires."  Fed. R. Crim. P. 33(a).  However, this Court "'should exercise its discretion to award a new trial

---

[1]

While "the Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration," *Nilson Van & Storage Co. v. Marsh*, 755 F.2d 362, 364 (4th Cir. 1985), "'district courts generally have "inherent authority" to decide motions for reconsideration . . . of orders in criminal proceedings,'" *United States v. Goodwyn*, 596 F.3d 233, 236 (4th Cir. 2010) (quoting *United States v. Aguirre*, 214 F.3d 1122, 1124 (9th Cir. 2000)).

sparingly'" and overturn a jury verdict only under the rare circumstance where the evidence "'weighs heavily'" against it.  *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)); *see also United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (quoting the same).  The Court cannot assume the exclusive function of the jury by weighing evidence or assessing credibility of witnesses.  *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942); *Pigford v. United States*, 518 F.2d 831, 836 (4th Cir. 1975) (per curiam)).  Only "when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, [should] the court . . . grant a new trial."  *United States v. Arrington*, 757 F.2d 1484,1485 (4th Cir. 1985).

On a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the Court is "obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'"  *Smith*, 451 F.3d at 216 (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).  To sustain a verdict under this standard, the Court need not "be convinced beyond a reasonable doubt of the guilt of the defendant."  *White v. United States*, 279 F.2d 740, 748 (4th Cir. 1960); *see also Burgos*, 94 F.3d at 862 (defining "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt").  The Court must consider both direct and circumstantial evidence and permit the

Government "'all reasonable inferences that could be drawn it its favor.'" *United States v. McCall*, 352 F. App'x 811, 812 (4th Cir. 2009) (unpublished) (per curiam) (quoting *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008)).

## Discussion

Defendant argues that at trial: (1) the testimony originally presented to the grand jury was proven to be incorrect, or at least misleading; (2) the trial testimony did not prove beyond a reasonable doubt that Defendant's actions were material; (3) the testimony did not prove beyond a reasonable doubt that Defendant deprived Oconee County of any money or property; (4) the testimony did not prove beyond a reasonable doubt that Defendant acted with the intent to defraud; (5) Defendant's Fifth Amendment rights were violated by a constructive amendment to the indictment; (6) the Court committed clear error by overruling Defendant's objections to the jury charges; and (7) the Court erred by overruling Defendant's objections to pictures showing erosion at the Project site.

## A. Grand Jury Testimony versus Trial Testimony

Defendant urges this Court to reconsider its denial of his motion to dismiss the indictment, arguing that at trial, the testimony of DHEC Investigator Mike Temple to the grand jury was proven to be inaccurate, or at least misleading.  Defendant argues that the indictment should be dismissed in the interest of fairness and fundamental justice. In support of his argument, Defendant cites case law outlining the legal standard for analyzing a variance between the indictment and the proof presented at trial.  Here,

though, he asks the Court not to analyze the difference between the indictment and the evidence produced at trial, but instead, to analyze the difference between the testimony to the grand jury and the evidence presented at trial. But, "grand jury testimony is irrelevant to any potential claim [the defendant] may have regarding an illegitimate amendment or broadening of the indictment, because such a claim would necessarily be based on jury instructions and testimony presented at trial, not testimony before the grand jury." *United States v. Daly*, No. 96-1604, 1997 WL 606757, at *1 (2d Cir. Oct. 2, 1997) (unpublished). Defendant provides no standard for analyzing a variance between the grand jury testimony and trial testimony and offers no explanation as to why the indictment versus trial standard should apply here. However, in an abundance of caution, the Court has analyzed Defendant's argument using the analytical standard he proposes. Even applying this standard, Defendant's argument fails. The Court finds that even if Inspector Temple's statements to the grand jury were proven incorrect at trial, they did not prejudice Defendant and, likewise, were not so unfair or unjust as to merit dismissal of the indictment.

"Where the evidence at trial proves facts materially different from those alleged in the indictment, '[c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.'" *United States v. Mehta*, 594 F.3d 277, 280 (4th Cir. 2010) (quoting *United States v. Miller*, 471 U.S. 130, 136 (1985)). "A variance between the indictment and the proof at trial does not require reversal or dismissal of those charges unless it

affected the substantial rights of the defendant and thereby resulted in actual prejudice."
*Id.* (citing *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994)).  "Prejudice may
result if the variance surprises the defendant at trial and thereby hinders his ability to
prepare for his defense or if the variance exposes the defendant to a risk of a second
prosecution for the same offense."  *Id.* at 280–81 (citing *United States v. Fletcher*, 74
F.3d 49, 53 (4th Cir. 1996)).

## 1. <u>Forty-Eight Acres versus Sixty Acres</u>

While explaining to the grand jury how DHEC had discovered Defendant's scheme,
Inspector Temple stated that "DHEC reviewed their records and found that they were
only aware of ---- [sic] of 20 acres disturbance area and this was like a 60 area of
disturbance.  So they just started questioning a little bit and asked [Defendant] to provide
a copy of the plans . . . ."  (Mem. in Supp., Attach. 1 at 11:15–17, ECF No. 92-3.)[2]
Defendant claims, however, that Inspector Temple testified that the plans prepared by
the Defendant were for sixty acres and that trial testimony proved that Defendant had
no knowledge that the site had been increased from the forty-eight acres shown on
Defendant's plans.

Defendant mischaracterizes Inspector Temple's testimony.  Inspector Temple did
not testify to the grand jury that the plans at issue were for sixty acres; he testified that

---

[2] Defendant did not direct the Court to a specific page or line number in the grand jury
transcript.  Finding no other reference to sixty acres, the Court assumes this is the
portion of testimony Defendant challenges.

the amount of area disturbed, at the time DHEC went out to investigate, was approximately sixty acres. This mirrors the testimony at trial. At no point in Inspector Temple's grand jury testimony did he identify the amount of acreage in Defendant's plans, either correctly or incorrectly. As such, with regard to this portion of the grand jury testimony, there was no meaningful variance between Inspector Temple's grand jury testimony and the evidence at trial.

## 2. Deficiency of the Plans

Defendant also takes issue with Inspector Temple's grand jury testimony regarding whether the plans Defendant prepared were deficient. Inspector Temple testified to the grand jury as to the deficiency of the plans:

> Q: So, is it fair to say that these falsified plans allowed work to go forward that [sic] resulted in environmental damage?
>
> A: Yes.
>
> Q: And had the seal not been affixed to those plans falsely, that that [sic] work would not have gone forward and that damage likely would not have resulted?
>
> A: It would not have. I've been told by Laura Thomas[3] that the plans, as they were written, would not have been approved.

(Mem. in Supp., Attach 1 at 12:3–12.) Defendant argues no one testified at trial as to whether Defendant's plans were substantively deficient. For purposes of mail fraud or wire fraud, though, the substantive deficiency of Defendant's plans did not have to be proven in order for the jury to find Defendant guilty. The fact that Defendant fraudulently

---

[3]Laura Thomas is a DHEC field inspector.

placed a seal on plans he represented as validly approved is sufficient for the jury to have found that the plans were fraudulent, and therefore deficient. Defendant was made aware of this grand jury testimony, and he challenged the testimony of DHEC Investigator Laura Thomas before the jury on this matter.

Inspector Temple's grand jury testimony, therefore, did not impede Defendant's ability to prepare his defense or expose him to future prosecution based on the same offense. As such, the Court finds that Defendant was not prejudiced by this alleged misstatement to the grand jury.

### 3. Responsibility for the Erosion

Finally, Defendant argues trial testimony proved that, in contradiction to Inspector Temple's grand jury testimony, others were responsible for the erosion. First, as a controverted factual issue, responsibility for the erosion was an issue for the jury to decide. This Court may not supplant the jury's findings regarding who or what caused the erosion with its own factual determinations. Second, if anything, Inspector Temple's grand jury testimony regarding erosion gave Defendant notice of the Government's possible strategy at trial and better prepared him to address any attempts by the Government to introduce evidence of the erosion in addressing the materiality of Defendant's acts. (*See* Mem. in Support 9–10 (arguing the Court should have sustained Defendant's objection to the Government's introduction of photos of the erosion).) As with Defendant's prior claim, there is nothing unfair or unjust about the grand jury testimony, and nothing in this portion of the grand jury testimony impeded Defendant's

ability to prepare his defense or exposed him to future prosecution based on the same offense.

Because there was no variance between the first portion of Inspector Temple's grand jury testimony and the evidence at trial, and because the alleged variances between the last two portions of grand jury testimony and the trial testimony neither hindered Defendant's ability to prepare his defense nor exposed him to a risk of a second prosecution for the same offense, the Court finds no manifest injustice that would require it to reconsider its prior order.  Defendant's Motion to Reconsider is, therefore, DENIED. Insofar as Defendant advances this argument to support his Motion for a New Trial and/or for a Judgment of Acquittal, the Court DENIES that Motion as well.

## B. Sufficiency of the Evidence

Defendant next argues the Government failed to "substantiate beyond a reasonable doubt" the elements of materiality, money or property, or intent.  Defendant's arguments are without merit.

A convicted defendant "carr[ies] an imposing burden to successfully challenge the sufficiency of the evidence."  *United States v. Martin*, 523 F.3d 281, 288 (4th Cir. 2008) (citation omitted).  The Court must "remain cognizant of the fact that '[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretations to believe.'"  *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (quoting *United States v. Murphy*, 35 F.3d

143, 148 (4th Cir. 1994)).  In reviewing a jury's finding of guilt, the Court must view the

evidence in the light most favorable to the Government.  *United States v. Rusher*, 966

F.2d 868, 878 (4th Cir. 1992).

Defendant was convicted under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. §

1343 (wire fraud).  For mail fraud, the Government had to prove the following beyond

a reasonable doubt:

> First, the Defendant knowingly devised or intended to devise a scheme to defraud, or to obtain money or property, by using false or fraudulent pretenses, representations, or promises;
>
> Second, the false or fraudulent pretenses, representations, or promises were about a material fact;
>
> Third, the Defendant acted with the intent to defraud; and
>
> Fourth, that in advancing, furthering, or carrying out this scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, the Defendant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud.

(Jury Instructions 8–10, ECF No. 83.)  For wire fraud, the Government was required to

prove the following beyond a reasonable doubt:

> First, the Defendant knowingly devised or intended to devise a scheme to defraud, or to obtain money or property, by using false or fraudulent pretenses, representations, or promises;
>
> Second, the false or fraudulent pretenses, representations, or promises were about a material fact;
>
> Third, the Defendant acted with the intent to defraud; and
>
> Fourth, that in advancing, furthering, or carrying out this scheme to

defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce.

(*Id.* at 13–14.)  The Jury Instructions included the following definitions, which applied

to both §§ 1341 and 1343:

> A "scheme to defraud" includes any plans or course of action intended to deceive or cheat someone out of money or property using false or fraudulent pretenses, representations, or promises.
>
> . . . .
>
> A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something.  A fact is "material" if it has the capacity or natural tendency to influence a person's decision.  It doesn't matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.
>
> The "intent to defraud" is the specific intent to deceive or cheat someone, usually for personal financial gain or to cause financial loss to someone else.

(*Id.* at 10–11, 13–14.)

## 1. **Materiality**

Defendant argues the Government failed to prove beyond a reasonable doubt that

Defendant's actions were material.  Repeating the same argument Defendant presented

to this Court in his motion to dismiss and to the jury at trial, Defendant argues that the

intervening acts of his supervising engineer and the grading contractor rendered

Defendant's acts immaterial.

The Government presented substantial evidence for the jury to find that obtaining

a valid permit was material to Oconee County's decision to enter into a contract with Talbert and Bright and that a valid permit was material to the progress of the Project. Kevin Short, the director of the Oconee County Airport, testified that "part of the responsibility for any engineering firm would be to acquire the necessary permits for a construction project." (Tr. of Trial Test. of Short, Talbert, & Smith 8:4–6 & 12:22–24 May 16–17, 2011, ECF No. 97). Mr. Short later went on to elaborate that Oconee County's expectation was that it was paying Talbert and Bright in order to "have an . . . environmentally compliant . . . runway extension that would be safe . . . and, again, comply with all the FAA [Federal Aviation Administration] and environmental guidelines." (*Id.* at 15:22–16:1.) The Government also entered into evidence a letter signed by Defendant to Mr. Short that stated as follows: "Enclosed please find four copies of the Notice of Intent for the subject property. Please execute all copies . . . , attach a check in the amount of $2,125 made out to the SCDHEC and return to our office. *We will* attach it to the permit package and *submit it to SCDHEC*." (*Id.* at 16:18–22 (emphasis added); Gov't Ex. 5.) The Government also provided evidence that, historically, the course of conduct between Talbert and Bright and the airport was that Talbert and Bright's job was considered done once it sent the airport validly approved plans.

> Q: Now, when you received these Line of Sight[4] plans with that red DHEC seal, what did that mean to you?

---

[4]

The Line of Sight project was a different project Defendant and TalbertBright completed for the airport prior to starting work on the Project.

A: That Talbert [and] Bright had done their job.  They had done what their responsibilities were and obtained a Storm Water Permit for the Line of Sight project.

Q: Were there any storm water issues with the Line of Sight project?

A: There were no adverse issues.

(*Id.* at 21:7–15.)  The Government questioned Mr. Short about the plans at issue and what it meant to Mr. Short to see those plans with a red DHEC stamp on them.

Q: And when you saw that [red DHEC stamp], when you received those plans, what did that mean to you?

A: Once again, that meant to me that they had done due diligence.  They had submitted plans for DHEC review and DHEC reviewed them and stamped them and said the plans were good to go.

Q: Did you think that was a valid permit?

A: Yes, I did.

Q: And is that part of what you paid Talbert [and] Bright for?

A: Yes.

(*Id.* at 22:18–23:3; Ex. 3B.)  Furthermore, the Government specifically questioned Mr. Short about the impact of the plans not being validly stamped.

Q: Now, what happened with your Runway Extension project in late February and early March of 2010?

A: In early March, I was approached by two . . . investigators from DHEC. And they asked me questions about the actual permit documents and basically explained to me that the permit documents were not valid. . . . .

Q: Okay. And after that conversation, what ended up happening at the airport itself?  What happened with the work that was being done?

> A: Each time DHEC inspected ---- [sic] from the first time they inspected . . . DHEC's instruction was to Oconee County that you have ---- [sic] you can only do work on this project that involves erosion control measures and sediment control measures and the maintenance of those measures. You cannot do ---- [sic] it advised us we couldn't do any, you know, construction work. We could only do those measures to make the site stable as far as storm water runoff and sediment runoff. We weren't allowed to do any other work. And they said that every time they came to visit, either verbally or in . . . writing.

(*Id.* at 32:18–33:14.)

Defendant's theory, that the intervening acts of others reduced or eliminated the importance of Defendant's acts, was presented to and rejected by the jury. Additionally, this Court "remain[s] cognizant of the fact that '[t]he jury . . . weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretations to believe.'" *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (quoting *Murphy*, 35 F.3d at 148). There was substantial evidence supporting the materiality of Defendant's acts.

## 2. **Property**

Defendant next argues the Government failed to prove beyond a reasonable doubt the money or property element. For the first time in this case, Defendant asserts new arguments on property. First, relying on a title block on Government's Exhibit 3A, Defendant claims the plans are property of the engineering firm and not the airport. Second, Defendant asserts the airport's right to a legitimate, working set of plans is no more than a contractual right to honest and faithful service.

The Court is not persuaded that Defendant's post-trial presentation of evidence is appropriate. At trial, the Government presented testimony establishing that Oconee County had a contract with Talbert and Bright for validly approved storm water plans for the Project. Mr. Jay Talbert, one of the named partners of Talbert and Bright, testified as follows:

> Q: Okay. What product for that $293,000 [the airport paid you] were you expected to deliver to Oconee County and the airport?
>
> A: It would be a set of plans and specifications. . . . And for the plans to get that far, it would further include all of the permits necessary to get the project going.
>
> Q: Would that include the DHEC Storm Water Permit?
>
> A: Yes, sir, it would.

(Tr. of Trial 96:22–97:6; *see also* Testimony of Kevin Short at 12:22–24 and 15:22–16:1, quoted *supra* Section B.1.)

Defendant had the opportunity to cross-examine the Government's witnesses, and, in fact, did so thoroughly. Defendant could have challenged the Government's evidence at trial so that the jury could have made a factual determination as to ownership of the plans. Instead, despite having the "proof" of Talbert and Bright's ownership of the plans, Defendant did not present it at trial and now tries to convince the Court to order a new trial or set aside the jury's verdict based on a title block on an exhibit. The Court declines to do so. There was sufficient evidence for the jury to find the plans were property of Oconee County and were not merely a contractual right to honest and faithful service.

### 3. Intent

Finally, Defendant argues the Government failed to prove beyond a reasonable doubt that Defendant intended to defraud Oconee County.  Defendant ignores the fact that at trial he stipulated that he had intentionally cut out a valid DHEC stamp from another project's plans and placed it on the storm water construction plans for the Project.  Additionally, the Government presented witnesses who testified they found the other project's plans in Defendant's office with a cutout where the DHEC seal usually appears.  (*See* Tr. of Trial 114:3–12, Test. of Jay Talbert (stating that, while searching Defendant's office, another employee found a set of plans from another project where "the original DHEC permit . . . appeared to be cut off the plans with a pair of scissors"); *id.* at 179:4–17, Test. of Al Smith (stating he found the plans in Defendant's office with the DHEC stamp cut out).)  The Government entered the plans with the cutaway section into evidence as Government's Exhibit 2.  The Government also presented emails from Defendant to DHEC, to which Defendant had attached altered cover letters and a copy of the altered plans.  (Gov't Exs. 7 & 8.)  There was substantial evidence for the jury to find that Defendant had acted with intent to defraud Oconee County into thinking Defendant's storm water construction plans had been validly approved when in fact they had not.

Therefore, the Court concludes that, taking the evidence in the light most favorable to the Government, there was substantial evidence supporting the jury's verdict.

## C. Jury Instructions

Defendant next argues the Court constructively amended the indictment through its jury instructions, thereby violating his Fifth Amendment rights.  Relying on *Cleveland v. United States*, 531 U.S. 12 (2000), Defendant argues the instructions, like the indictment, should have charged the offenses in the conjunctive form, and thus the Court erred in overruling Defendant's objection to the instructions and in charging the jury in the disjunctive form.[5]  The Court disagrees.

As a general matter, constructive amendment does not occur where the indictment is written in the conjunctive form but the judge charges the jury using the disjunctive form.  *See United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001) ("'Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive.  The district court, however, can instruct the jury in the disjunctive.'" (quoting *United States v. Rhynes*, 206 F.3d 349, 384 (4th Cir. 1999))); *see also McAuliffe v. United States*, No. 2:03-cr-70, 2009 WL 1928547, at *19 (S.D. Ohio July 2, 2009) (analyzing § 1341 and stating  "'[i]t is settled law that an offense may be charged  conjunctively  in  an  indictment  where  a  statute  denounces  the  offense

---

[5]

The mail fraud and wire fraud statutes state, in part:  "Whoever, having devised . . . any scheme or artifice to defraud, **or** for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . ."  18 U.S.C. §§ 1341 & 1343 (emphasis added). Defendant argues the statutes should have been charged in the conjunctive form, as they were phrased in the indictment, such that the jury instruction would have read "whoever, having devised . . . any scheme or artifice to defraud **and** for obtaining money or property."

disjunctively. Upon the trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute.'" (quoting *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983) (per curiam))). Here, the Government was obliged to indict in the conjunctive, and this Court's disjunctive charge merely tracked the statutes' language.[6]

Furthermore, this Court's instruction reflected Supreme Court precedent on the mail fraud and wire fraud statutes. *See Cleveland*, 531 U.S. at 25–26 (stating that the second phrase, "for obtaining money or property," simply modifies the first, "scheme or artifice to defraud," by "mak[ing] it unmistakable that the statute reache[s] false promises and misrepresentations as to the future as well as other frauds involving money or property"); *see also United States v. Males*, 459 F.3d 154, 157 (2d Cir. 2006) ("It is well established that the language in [the wire fraud statute] . . . is not to be read in the disjunctive."). The Jury Instructions's definition of "scheme to defraud," which is the first clause before the disputed "or" in the statutes, states as follows: "[a] 'scheme to defraud' includes any plans or course of action intended to deceive or cheat someone *out of money or property* using false or fraudulent pretenses, representations, or promises." (Emphasis added.) In *Males*, the Second Circuit held that the jury charges were sufficient

---

[6]

Because the wire fraud and mail fraud statutes are so similar, the same analysis applies, and case law for each may be used to support the other. *See Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").

and comported with the Supreme Court's command where the definition of "any scheme or artifice to defraud" was defined as a "course of action that deprives another of money or property." 459 F.3d at 157.

Here, in response to the jury's question to the Court during deliberations, (*see* Ct. Ex. 1, ECF No. 79 ("The wording is different between the indictment and the wording of [the mail fraud statute]. . . . I find the difference in wording of and & or to be critical to our verdict. Could you re[s]pectfully clear-up if our verdict should be based on the indictment or on [the mail fraud statute].")), the Court directed the jury to read the instructions again and to focus on pages nine and ten, which includes the definition of "scheme to defraud." The Court's definition of scheme to defraud reflected the law *and* gave, effectively, Defendant the meaning he sought.

Case law establishes that, while the Government may have to indict using conjunctive language, the Court may instruct the jury using disjunctive language as long as the statute involved also uses disjunctive language. That is the case here. Additionally, the Court finds that its definition of "scheme to defraud" in the jury instructions sufficiently addressed the Supreme Court's treatment of these statutes in *Cleveland*. Therefore, insofar as Defendant makes this argument in support of his Motion to Reconsider, it is DENIED, and this Court also DENIES Defendant's Motion for a new trial and a judgment of acquittal.

### D. <u>Photographs of Erosion</u>

Lastly, Defendant asks this Court to set aside the jury's verdict or grant Defendant

a new trial based on the Court overruling Defendant's objection to the Government showing the jury photographs of erosion that occurred in and around airport property. Defendant argues that the note from the jury and the length of time it took for the jury to reach a decision indicate that the case was very close.

Nonconstitutional error is harmless if the Court can say "'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir. 1992) (quoting *United States v. Nyman*, 649 F.2d 208, 211–12 (4th Cir. 1980)). "One of the 'decisive factors' in applying this standard is the closeness of the case." *Id.* (quoting *Nyman*, 649 F.2d at 212).

Here, the jury questioned the Court during deliberations, not about the pictures of erosion or the purported environmental effects of Defendant's acts, but about the wording of the statutes. The closeness of this case did not involve the erosion. Additionally, the jury instructions did not mention damages, environmental impact, or erosion at all. Therefore, nothing directed the jury's attention or focus to those photographs. Regardless of whether the Court correctly overruled Defendant's objection, the Court finds it highly improbable that the jury found Defendant guilty on both mail fraud and one count of wire fraud based on the pictures of erosion. Given the substantial evidence supporting the actual elements of the charged crimes, this simply was not a close case that could have been swayed by erosion photos.

## **Conclusion**

Viewing the evidence in the light most favorable to the Government, as it must, this Court finds there is substantial evidence to uphold the guilty verdict.

IT IS THEREFORE ORDERED that Defendant's Motion to Reconsider Denial of his Motion to Dismiss be DENIED, and Defendant's Motion for New Trial and/or For Judgment of Acquittal also be DENIED.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

Anderson, South Carolina
July 11, 2011

## **NOTICE OF RIGHT TO APPEAL**

Defendant has the right to appeal within **fourteen (14)** days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.  Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal**.